**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT PADUCAH**
**CIVIL ACTION NO. 5:05-CV-7-J**
**CRIMINAL ACTION NO. 5:96-CR-24-J**

**ANTHONY CHARLES GAINES, JR.**                      **MOVANT/DEFENDANT**

**v.**

**UNITED STATES**                                            **RESPONDENT/PLAINTIFF**

### MEMORANDUM OPINION AND ORDER

This post-conviction motion presents the issue whether a federal prisoner's youth, in light of all the equities, warrants tolling the one-year limitation period for seeking review under 28 U.S.C. § 2255.

**I.**

Serving out a forty-year sentence at the federal penitentiary in Leavenworth, Kansas, for crimes committed at the age of 17, Defendant, Anthony Charles Gaines, Jr., *pro se*, moves to vacate his conviction or to correct his sentence on grounds of ineffective assistance of counsel at every stage in his defense, from transfer for prosecution as an adult and ensuing discovery, through the entry of a guilty plea and sentencing, to an unsuccessful appeal.

The appellate opinion affirming concisely states the facts of the criminal case as follows:

> On April 1, 1996, Gary Harris and Anthony Gaines were planning to rob a convenience store located on the grounds of the U.S. Army base at Fort Campbell, Kentucky. As they waited for an opportune moment to enter the store, two soldiers, Michael Alonso and Goge Lopez, walked toward the store. Harris and Gaines pulled bandanas over their faces and confronted the soldiers. Gaines told them to "Back up" and brandished a revolver, which discharged, hitting Alonso in the neck. Harris and Gaines ran away; Alonso eventually died from his wounds.
> Following their arrest, the Government charged the two defendants with one count of unlawfully killing another human being within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. §§ 2 and 1111; one count of attempted robbery, in violation of 18 U.S.C. §§ 2 and 2111;

>and one count of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c). The defendants originally appealed the district court's decision to sentence them as adults (they were both under eighteen at the time of the original proceeding) but they waived those claims at oral argument before this court.

*United States v. Harris*, 238 F.3d 777, 778 (6th Cir. 2001).

On the sole issue before it, the Sixth Circuit affirmed the sentence for what is typically referred to as felony murder[1] (a sentence commensurate with first degree murder), despite Defendant's guilty plea to a lesser charge of second degree murder – a discrepancy of an additional twenty or more years' imprisonment. *Id*. at 779. The Sixth Circuit explained that the case of *United States v. Poindexter*, 44 F.3d 406, 410 (6th Cir. 1995) required using first-degree-murder sentencing guidelines where death results from the commission of certain felonies delineated in the federal murder statute, 18 U.S.C. § 1111.[2] Here, as the Sixth Circuit stated, death "clearly" resulted during the commission of one such felony, attempted robbery. *Harris*, 238 F.3d at 778.

## II.

Today as then, Defendant maintains the revolver discharged accidentally. It is a complete miscarriage of justice, Defendant argues, to sentence a 17-year-old to forty-years' imprisonment, using first-degree murder guidelines, for a conviction on a guilty plea to second-degree murder – an outcome caused, as Defendant alleges, by counsel's deficient performance

---

[1] *See United States v. Miguel*, 338 F.3d 995 (9th Cir. 2003) ("To convict someone of felony murder, the Government must show that a participant in the underlying felony committed the killing during the course of the felony.").

[2] 18 U.S.C. § 1111(a) states, "Murder is the unlawful killing of a human being with malice aforethought. Every murder ... committed in the perpetration of, or attempt to perpetrate, ... any robbery ... is murder in the first degree. Any other murder is murder in the second degree." Here, because the government failed to specify first or second degree murder in the indictment, this Court ruled the indictment charged only second degree murder. For a fuller discussion of the charge and sentence, see *Harris*, 238 F.3d at 778-79.

and overbearing advice to plead guilty.

Defendant alleges his counsel rendered ineffective assistance in numerous ways, the more salient criticism, for now, being defense counsel's failure to seek and offer psychiatric testimony at a juvenile transfer hearing to determine Defendant's psychological maturity.[3] Defendant also alleges several sentencing errors, such as counsel's failure to present a history of child abuse. It appears counsel failed to account for the sentencing implications of *Poindexter* in advising Defendant to plead guilty. He questions counsel's failure to move to dismiss the indictment for failure to give adequate notice of the charge and sentence. He further questions counsel's failure to protect him against self-incrimination by consenting to a jail-house interview with investigators and the prosecutor within two months of his arraignment.[4]

In a guilty plea context, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). Defendant was 19 at the time he entered a guilty plea. He argues no

---

[3] One finding a district court must make to support discretionary transfer for criminal prosecution is "the juvenile's present intellectual development and psychological maturity." 18 U.S.C. § 5032 at ¶ 5. This Court first ruled the indictment triggered the mandatory transfer provision under 18 U.S.C. § 5032. (DN 58.) After Defendant's interlocutory appeal was dismissed as untimely, this Court held an evidentiary hearing in September 1998 and made findings, alternatively, to support discretionary transfer. (DN 85, 88, 89.) On direct appeal, Defendant's counsel waived his defenses to the transfer at oral argument before the Sixth Circuit panel. 238 F.3d at 778.

[4] Defendant alleges he never received *Miranda* warnings and implies that his counsel, Jill L. Giordano, appointed at arraignment in December 1996, was absent during an interview he gave while detained in the McCracken County Jail with two investigators and a federal prosecutor on January 27, 1997. (Defense Co-counsel, Len Ogden, was appointed in March 1997.) Defendant states he did not realize his statement could be used against him and strenuously criticizes counsel's failure to move to suppress his statement and other unspecified evidence. At a hearing on September 28, 1998, Counselor Ogden examined the investigator, Mark Huber, who testified that Defendant's assertion of an accidental shooting was consistent with his investigation. On cross-examination, Mr. Huber stated simply that Defendant's counsel was present and that Defendant waived his rights prior to the interview.

reasonable jury would have convicted him of an intentional murder.

Just as significant in terms of the sentencing guidelines, Defendant argues no reasonable jury would have convicted him of felony murder. Defendant explains that the evidence shows an intent to rob the convenience store (presumably the store clerk), not the two soldiers, because once the gun discharged, he and the other defendant ran away without taking anything; that because Mr. Alonso happened on the scene and was not a target of any attempt at robbery, there is no overt act sufficient to establish attempted robbery. Absent a link between the accidental killing and attempted robbery, according to Defendant's version, there is no evidentiary basis for applying the first-degree-murder sentencing guidelines.

The Court notes that other actions, such as brandishing a revolver, may suffice as an overt act. But, the point remains: a jury did not resolve these differing versions of the facts. The question then becomes whether Defendant's guilty plea settled the issue? The indictment here, a barebones pleading, is silent. It separately charges murder and attempted robbery and contains no direct or inferential allegation that "death result[ed] from the commission" of attempted robbery, an element having a significant impact on Defendant's sentence. *See Harris*, 238 F.3d at 778 (quoting U.S. Sentencing Guidelines § 2A.1.1, § 2B3.1).

Here, in his dissenting opinion, Circuit Judge Merritt presciently invoked the reasoning in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and stated, "The *Apprendi* approach seems to me to disfavor the current judicial and prosecutorial practice of not giving notice by indictment of the real crime at issue and leaving most of the more salient factual disputes for the sentencing hearing, where the burden of proof is less rigorous 'preponderance of the evidence' standard and the hearsay rules do not apply. Following the logic of *Apprendi*, the government should not have

4

been able to cure its charging error simply by convincing a judge outside the normal rules of evidence that the preponderance of the evidence indicated that Harris and Gaines [Defendant] committed first degree murder.  This is consistent with my longstanding belief that the Sentencing Guidelines – as interpreted in *Poindexter* and our previous cases – violate the Due Process Clause." *Harris*, 238 F.3d at 779-80 (citation omitted).

Leaving other allegations of deficient performance aside, defense counsel's failure to predict the application of the *Poindexter* precedent and their failure to navigate cross references in the then-mandatory sentencing guidelines would likely, today, be of little or no consequence given the recent upheaval of the federal sentencing scheme since *United States v. Booker*, 125 S.Ct. 738 (2005).  *See Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005) (rejecting retroactive application of the *Booker* rule, which prohibits judicial fact-finding to enhance a defendant's sentence beyond the facts established by a jury verdict or admitted by the defendant).

Quite apart from *Booker's* new rule, although an interesting backdrop to the disposition of this case, the sentencing cure Defendant depends on, the errors he seeks relief for, stem from the Sixth Amendment's guarantee that in a criminal proceeding the accused shall receive the effective assistance of counsel in his defense.

### III.

At the threshold of these issues, however, lies the question whether Defendant may seek relief by motion under § 2255 two-and-a-half years after expiration of the one-year limitation period.  This Court entered a show-cause order to determine from Defendant's response whether there are grounds for equitably tolling the limitation period, as set forth in *Dunlap v. United*

5

*States*, 250 F.3d 1001, 1004-05 (6th Cir. 2001).[5] Defendant essentially argues three factors excuse his delay: his young age; coupled with his reliance on counsel's erroneous advice that there were no other legal remedies; and actual innocence of the charges in the superseding indictment.

"Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F3d 638 (6th Cir. 2003). "A litigant who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Id*. "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Id*. Consequently, federal courts apply the doctrine of equitable tolling sparingly.

The Court now faces the issue whether Defendant's youth, in light of all the circumstances in this case, compels equitable consideration. Defendant describes himself as having been particularly gullible and inexperienced, lacking the maturity and self-directedness necessary not to capitulate to counsel's insistence to plead guilty, at the outset of trial, absent any plea agreement. Defendant contends he naively believed his counsel's instruction that he could not file anything more to further his defense.[6] Defendant also describes his reluctance to venture

---

[5] *See Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005) (In determining whether equitable tolling should apply, a court must consider the following five factors: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim); *Griffin v. Rogers*, 399 F.3d 626 (6th Cir. 2005) ("These five factors 'are not comprehensive,' ... [and] courts must consider equitable tolling on a 'case-by-case basis'."); *Allen v. Yukins*, 366 F.3d 396 (6th Cir. 2004).

[6] Defendant states, "Counsel informed the defendant-movant that he cannot file 'anything' to the court on anything or for anything. Years later, the Movant learned that he can file various collateral challenges to the court." (Response to Show Cause, p. 2.)

out and seek legal aid in prison because of his youth and particular vulnerability.[7]

"Our cases recognize that youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage. A lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young." *Johnson v. Texas*, 509 U.S. 350, 367 (1993) (internal quotations and citation omitted). "The emotional and mental immaturity of young people may cause them to respond to events in ways that an adult would not." *Id*. at 388 (J. O'Connor, dissenting); *but see Lewis v. Walsh*, 2003 WL 21729840 (S.D.N.Y. 2003) (holding the petitioner's age and ignorance of the law are not extraordinary circumstances warranting equitably tolling a four-year-late petition); *cf. Roper v. Simmons*, 125 S.Ct. 1183 (2005) (holding "the mitigating force of youth" categorically exempts juvenile offenders from the death penalty).

The disadvantage of youth is beyond cavil. It is a common thread to all Defendant's allegations, from the ineffective assistance allegations to the dilatory filing of the present motion. Whether, on balance, Defendant's is an exceptional case that warrants, within this Court's discretion, equitably tolling the statute of limitation weighs heavily. This case may well call for leniency. Absent equitable tolling, Defendant faces the certainty of forty years in prison without judicial review whether counsel's alleged deficient performance in the defense of a teenaged

---

[7] Defendant was 17 in April 1996 and at the time the government filed charges by information in November 1996. Defendant was 19 at the time he entered a plea of guilty, on October 23, 1998. Defendant was aged 22 after the Sixth Circuit affirmed on appeal, and the United States Supreme Court denied the petition for a writ of certiorari, on or about June 18, 2001. Defendant rested on his rights until July 16, 2004, when he moved for production of a guilty plea transcript, then aged 25. Although the Court granted the motion, Defendant appealed and ultimately moved to dismiss the appeal, which was granted on or about November 8, 2004. Defendant's current motion bears the filing date, January 10, 2005.

offender resulted in a constitutionally infirm conviction and sentence, what appears at this early stage of the proceedings to be a colorable Sixth Amendment claim.

The principles of equity disfavor rigid application of the limitation period as long as Defendant has exercised reasonable diligence in investigating and bringing his claims. Defendant has yet, however, to provide full explanation (if any, in addition to vulnerability and immaturity) why he waited to file the current motion. In turn, the government has had no opportunity to present opposing argument to assist the Court's review.

**IV.**

Therefore, the Court cannot conclude, pursuant to Rule 4, that it plainly appears from the motion that the moving party is not entitled to relief. *See* Rule 4, Rules Governing § 2255 Proceedings, 28 U.S.C.A. following § 2255. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion shall be filed in the original criminal action. The Clerk shall furnish Respondent with a copy of Defendant's motion. Respondent shall file an answer, pursuant to Rule 5, within 21 days from the entry of this Order. Defendant may file a reply within 15 days of the date of service of the answer.

Dated:

cc:   Defendant, *pro se*
      United States Attorney

4408.007